Good morning, Your Honors, and may it please the Court, William E. Trachman for Appellant Christine Searle. Respectfully, I will try to reserve four minutes for rebuttal. A federal court ought to have something to say about the fact that Ms. Searle lost her home worth between $400,000 and $500,000 over a tax debt of around $1,600. After the Supreme Court's unanimous decision in Tyler v. Hennepin County, it's clear that tax debtors have a cause of action when they are denied the difference between their debt and the value of their property. And the Supreme Court's decision in the Nick case emphasizes that plaintiffs have a right to bring their federal takings cases in federal court. As the Arizona Attorney General acknowledged when it confessed error below, Ms. Searle was unconstitutionally deprived of her property when the difference between her debt and the value of her home was denied to her. That fact was so obvious that a bipartisan law has been enacted to ensure that Ms. Searle's facts never reoccur in Arizona. Unfortunately, before the law was changed, Ms. Searle's fate was shared by thousands of Arizonans who lost their livelihoods to real estate speculators. In this case, Treasurer Allen and the private defendants worked in concert to deprive Ms. Searle. The change in law was not retroactive. Is that correct? That's absolutely correct, Your Honor. So this is a change in law that occurred in April of 2024. Going forward. That's right. And so it didn't apply to Ms. Searle because she lost her property. The Treasurer's deed was issued in February of 2022. Now, the change, if the appellees want to say that the change will apply to her prospectively because her house hasn't been sold yet, that's a different matter. But to date, they have not alleged that the change in law will apply to her or that it guarantees her any life. Let me just clarify one thing to make sure I understand your claim. Your claim has to do with the delta, correct, between what was necessary to pay off the tax debt and what the house and the cost and then the value that was left. And the taking and the her loss of that added that delta value there is what you're seeking to recover. Is that right? That's mostly. That's your takings claim. That's mostly correct, Your Honor. Why is it only mostly correct? Well, let's draw a line between the types of claims that you're referencing, Your Honor's referencing by our just compensation claim, our excessive fines claim, and our unjust enrichment claim. Those do seek merely the delta between the tax debt and the value of the house. So, yes, the answer is mostly correct. We also have a claim below for a private use taking in the sense that Maricopa County gave Ms. Searle's house to the private appellees. That claim is separate and apart from the just compensation claim. Ms. Searle would prefer to have her house back. Anyone would. But she is content to rely on this. Go ahead. So the judgment of the State court says that she no longer has title to the house, and that's been transferred, right, by the State court judgment. That's right. So an order from this court that says she gets to keep the house would be setting aside the State court judgment, would it not? It would not, Your Honor. So the best case for us on this is the Skinner case, which is a 2011 Supreme Court case that says just because a Federal court ruling would be intentioned with a legal conclusion reached by a State court. But it's not intentioned with a legal conclusion. It's directly contrary to the actual relief that's been ordered, right? You have one judgment that says the house no longer belongs to her, and then another judgment that would say she keeps the house. Well, that might be an incidental effect of a facial challenge, but those were Skinner's facts. Skinner was a prisoner. He sought DNA testing in Texas State court. The State court there denied him the right to DNA testing. Then he brought a 1983 claim in Federal court challenging the DNA testing regime. And the Supreme Court, Justice Ginsburg said there's no Rooker-Feldman problem there. The fact that you have an independent claim under 1983 that may incidentally lead to a result that is intentioned with a previous State court ruling is not a bar to the Federal court. In what sense is it incidental? I mean, it's like the — insofar as the — this action involves, like, it involves title to a specific piece of property. And you have one judgment that says, you know, one person has the title. And now there's going to be another judgment that says, no, somebody else does. That's — how is that incidental? So let me preface this by saying we're drawing the line between the three claims on the one hand. Right. No, I understand that. But those are different. A facial challenge is different than the cases where someone goes to Federal court, walks across the street after getting a negative State court judgment and says the State court made an error. The State court did something wrong with the facts or the law. Here we aren't saying anything of the sort. So the Superior Court in Maricopa County accurately applied Arizona law. They made no error of fact. They made no error of law. There is no de facto appeal. What Ms. Searle is bringing now is a facial challenge to the statute that says as part of your foreclosure process, we give away your house to a private party. So the — if it's a facial challenge, it seems like then the judgment that you'll get from the Federal court if you win, the facial challenge, is not about her house. It's just sort of a declaration that in general the statute is unconstitutional. Is that right? Absolutely. We would be satisfied. Okay. But then how do you — how is that not moot? Well, the statute's been changed on a going-forward basis. But Ms. Searle hasn't lost her home yet. She still possesses it. She could be evicted tomorrow if this Court affirms. Her house hasn't been sold yet. But not on the basis of the statute. Well, the — The basis of a judgment that has already been entered. But the statute's not going to be applied to anybody going forward because it's been amended. Well, if the appellees want to stand up here and say that they plan to apply the new statute to Ms. Searle's facts, that's a difference. But for the time being, our understanding is that the appellees are going to go by the old statute and say, you've lost your right to your home. You've lost the right to the Delta. And we're about to take it over. They've given her an eviction letter saying that you are going to be gone by the — But that's not because of the statute. That's because they have a state court judgment that says that they now have the house. Right? They don't need the statute anymore now that there's a judgment. Well, respectfully, Your Honor, that's not quite right. So the judgment doesn't give you the right to possess or take ownership of the house. You take the judgment. You go pay a fee. You do some paperwork. You ask the treasurer, can I have Ms. Searle's house? And then it's the statute that gives the county the ability to say, yes, we've looked at your paperwork. You've paid the right fees and filled out the right forms. And that's why we're giving you the house. So that all happened and is about to consummate under the old statute. So let me just step it back just a little bit so I make sure I understand the procedural process. So she didn't pay her taxes for whatever reason. Right? That's correct. There's a lien on the property. That's correct, Your Honor. And the county says, okay, we want our taxes, so we're going to foreclose on that lien. That's correct, Your Honor. Right? So they file an action to foreclose on the lien? Is that what happens? So not quite. The county doesn't do that. They auction off the right to do that to private parties. Oh, I see. They auction off the right of foreclosure. And that's under the tax scheme, the property tax scheme. Is that right? That's right, Your Honor. So they auctioned off the right to foreclose. And how much did the county get for that? The county got the $1,600. The value of the? The value of what it was. The debt? Yes, that's right, Your Honor. The tax? Okay. So then it gets auctioned off, and that was auctioned off to, what's the name of the, who bought it at the auction? Arapahoe, Your Honor, one of the private appellees. Okay, so Arapahoe then gets the right to foreclose. That's correct, Your Honor. So then they proceed through the foreclosure proceedings. Right. And they get a judgment of foreclosure. That's correct, Your Honor. Terminating whatever rights she has. Well, the judgment does say Ms. Searle loses right, title, and interest to the property. Right. Okay. And then they have the right, Arapahoe, whoever it is, then has the right to take possession of the property and to sell it. So the record's a little bit unclear on this. The county says that Ms. Searle has the right to redeem even after that judgment has occurred. It's not totally clear under Arizona law whether that's true or not. But the answer to your question ultimately is yes, Arapahoe has the right to go to the county treasurer and say, we would like a treasurer's deed. We've succeeded at obtaining a judgment. Let's move forward here. Okay, so then they get the deed. Yes. And then that gives them the right to evict her. That's correct, Your Honor. And then they can sell the property for whatever market value they can get. That's absolutely right. Under the Arizona statute at play here, they can then go ahead and sell the property. And she's then deprived of that delta value. Right. So our claim is pleaded as the sense that she's already being deprived because she's lost ownership of the home. Yes, I understand. But in Tyler, yes, there was an auction. There was a delta. And then the government denied the plaintiff the delta. But I don't, you know, so I think ultimately for her to get her house back, we would have to say that there's something wrong with the foreclosure process. And that just doesn't seem correct. Well, I don't think so, Your Honor. Again, this goes to my answers to Judge Miller. And maybe you're not buying my — I understand that. Yeah. Maybe you're not buying my argument. But she's still in the house. She could be evicted tomorrow. She could obtain a declaration or nominal damages or something related to the previous statute that would then be prospective relief related to the fact that the old statute is interacting with her facts and preventing her from exercising her full bundle of property rights. We think that is something that isn't moot. Again, the standard for mootness, which is raised for the first time on appeal, it's the burden of the person pleading mootness to come here and demonstrate absolute certainty on mootness, is can the court issue an order with real-world effect? And we think that they — that this court absolutely can. And the second is the voluntary cessation doctrine, which asks, has the harm been entirely eradicated from the previous statute? Well, she's seeking damages, right? Well, she's seeking dollars from the surplus equity. We frame that as equitable relief that comes from the fact that the Constitution was violated and that she hasn't gotten the dollars from the just compensation right. Yes, Your Honor. But that part of the case is still alive and well. Well, we'd love to have you put that in writing, Your Honor. Isn't it? So, yes, we think, again, if you divide that line down the middle, which some courts like the Second Circuit endorsed did, and say you can always seek the surplus value, you can go back and bring an unjust enrichment claim or a takings claim for that, but you can't seek the property back. We understand if that's where this court draws the line. But we think that Skinner doesn't force it to. We think that Skinner — But Skinner only applies to your facial challenge to the scheme, correct? That's correct, Your Honor. And just to be clear, and I think you've said this, you're not claiming any defect in the procedure used in the foreclosure? Never, Your Honor. And that's — And so that's where you get into the Rooker-Feldman problem, is that ultimately you're challenging that judgment. Respectfully, no, Your Honor. I was with you until the last point, which is we aren't alleging any defect in that  Oh, I thought I understood you correctly.  And so under Skinner and under this court's decision in Boise v. Bell, there's no de facto appeal. That's the end of the inquiry. If the state court got it right, and we're only challenging the actions of the private parties in the county, and at most the state court ratified what those parties did, there's no Rooker-Feldman problem. With that, I'll try to reserve the rest of my time. You may. Mr. Moore? Thank you, Your Honor, and good morning. My name is Sean Moore. I'm with the Maricopa County Attorney's Office, and I represent the Maricopa County defendants. As a programming note, my plan is to quickly run through our one sort of unique Rooker-Feldman argument, and then yield the lion's share of the time to our co-defendants to address the broader Rooker-Feldman issues. Our issue or our argument, I think, is very straightforward. Plaintiffs basically didn't address it at all, so I hope to go through this pretty quickly. But first, one quick head note to clarify something. It's not that the treasurer sells the right to foreclose. Rather, the treasurer sells the lien, and then three years after the treasurer sells the tax lien, then the private purchaser has the right to foreclose. That's how the system works, Your Honor. Okay. Got it. But that hasn't happened in this case. That has happened in this case, Your Honor. So what happened here, there are two things that the Maricopa County defendants were alleged to have done. One, sell the tax lien, and two, years later, once the private defendants had acquired a State court judgment ordering the Maricopa County defendants to tender that tax lien to the private defendants, they did so. Right? And the plaintiffs have been very clear that all their claims, the only thing they think the Maricopa County defendants did that was wrongful was giving the title of the property to the private defendants, right, to the private appellees. And that's where plaintiff runs into their Roker-Feldman problem, is because the only reason the Maricopa County defendants actually tendered the deed of the subject property to the private defendants is because they were specifically ordered to do so in the State court foreclosure judgment. And therefore, to grant relief against the Maricopa County defendants as they want you to do, this court or the Federal court would necessarily have to say that the State court judgment was wrongful in ordering the Maricopa County defendants to do exactly that. It's a de facto appeal because they're saying what you did in ordering the Maricopa or in ordering the Maricopa County treasurer to tender that deed was wrongful. Now, plaintiff doesn't need to do that.  If we focus on the claims that are for, you know, unjust enrichment or damages, that, that, I don't see how that's necessarily inconsistent with execution of the judgment of the State court. Right. So that's how plaintiff tries to get around this, is she says, all right, we're not attacking the judgment which says that the private defendants get the property. We're saying that the damages come from the private defendants actually holding that property. But those allegations don't apply to the Maricopa County defendants at all. Right. In order to have those claims, the whole basis of those claims is that the defendants improperly withheld monies or property that was, that properly should have gone to the plaintiff. But the specific allegations in this case is that Maricopa County gave those things to someone else. The specific allegation is that pursuant to the State court judgment, they took the title and gave it to the private defendant.  But, but that's, I mean, but isn't that just a feature of, you know, what the substantive rule of constitutional law that they're invoking here, the rule of Tyler is that you can take their property and give it to someone else. You just have to pay them the excess of what, over what they owe, right? No. That's the rule of Tyler, isn't it? No. What Tyler said was if the government takes, the government cannot take more than what it was owed, basically. And in this case, the only thing Maricopa County received was the $1,600 from the private defendants. It received absolutely nothing from Plaintiff Wessler Lederer. You had a hand in the, you had a hand in taking the property. We didn't. You had a hand. You're the, it's the county that recorded the lien at the beginning. The county did record the lien, and then it sold the lien, and then it tend to it. The two, the, the, each defendant was involved in the alleged taking. I disagree, Your Honor. We did not institute, or we did not institute the foreclosure proceedings. The only thing we did after the foreclosure proceedings was tender the deed. They couldn't have. Once we were. Let me ask you this. Could they have initiated foreclosure proceedings? Could we have? Could they? Could, they did. Without that lien. Oh. I should, I should rephrase that. Could they have initiated the lien? No. No. But, I mean, the, the, I mean, they have to own the lien in order to foreclose on it. But the baseline. The county owned the lien. The county owned the lien. But no one's saying that it was wrongful for the county to sell the lien.  That's a standard financial transaction. She's, she, her, her claim is, as I understand it, is, is, is clearly a Tyler claim. Right. I understand that it's under Tyler. Our point is, is that under Rooker-Feldman, if you want to challenge what the State Court judgment said, and what the State Court judgment said is you, county, have to tender the deed to the other, to the private defendants. If you want to challenge that, you have to bring that challenge within the court where the judgment was issued. And that, that's the whole point of Rooker-Feldman. You cannot do a de facto appeal of the State Court judgment here in Federal Court. And so, while we agree that she may have a Tyler claim, that claim cannot be brought in this court. It has to be brought within the State Court, and that's the point of Rooker-Feldman. I'm happy to answer any other questions you may have, but I said I would reserve at least ten minutes. Could you clarify one point for me? I'm not sure that I understood it.  There was an allusion in your colleague's argument that she still had a right to be redeemed. Do you agree with that? I do not agree, Your Honor. I believe that the State Court judgment pretty solidly forecloses on any interest she has in the property. The position is that her rights have been extinguished. Yeah, by the State Court judgment, yes. Yeah. All right. Thank you. Thank you. Thank you. Good morning, Your Honors. John Lohr on behalf of Arapaho LLC and American Pride. If it pleases the Court, we respectfully request that the Court affirm the District Court's dismissal of the appellant's claims under the Rooker-Feldman doctrine. One thing I would like to clarify, right in the very beginning, Tyler does not ensure that a former owner is compensated under the taking claims. All that Tyler says in all the cases that deal with tax deed foreclosures says that they have to have an opportunity to make that claim. Well, that claim and that opportunity was in the first – well, actually, the second State Court case where we actually foreclosed the property. That was the time for her to make the claim. And let's look at this a little bit. Unfortunately, the appellant played Russian roulette, literally, with Arizona's tax lien foreclosure laws. Over a period of 10 years, she was sued five times. Five times. Four – three other tax lien investors and then twice by my client. The first three times, in 2010, 2015, and 2019, she redeemed the tax liens during the litigation, got a judgment for fees and costs against her, and then basically gave the finger to the investors. She refused to pay the fees and costs, most likely because she had a homestead exemption so she didn't want to pay the fees and costs. But then my client comes up and we say, okay – and let me give you a little bit of the background on the procedure here. We first send an initial notice to tell them, before we even file a lawsuit, your rights are about to be foreclosed. So it's called – we call it a 30-day notice. So we send this notice. We sent it to the property. She got the notice. She didn't do anything. We then filed the foreclosure lawsuit. Then, during the middle of the foreclosure lawsuit, her son came in. They paid the property taxes on the first lawsuit. Okay? We then get a judgment. There is an email in the record that shows that I communicated with her son and said, okay, we need you to pay the fees and costs on this judgment for the first foreclosure. And by the way, we have another foreclosure coming up on the 2017 lien. Okay? We need you to pay that so we don't have to go through this again. But much of the same thing was true in Tyler, in the sense that there the foreclosure was a state court judgment that extinguished Tyler's rights to the property. And then she went to federal court seeking the damage for the difference, the excess over the tax liability. And so I'm struggling to see. On your theory, it seems like the Tyler against Hennepin County, the federal case, should have been barred by Rooker-Feldman. And do you think that's right? I mean, is it just that nobody at the Supreme Court noticed that? No, Your Honor. The Tyler case is completely different. First of all, they didn't do a Rooker-Feldman analysis in that case. I know, but shouldn't they have on your theory? Well, let's look at what happened in that case. First of all, I'd really like to say Christine Sturley is no Geraldine Tyler. Geraldine Tyler did not have the financial ability to pay her property taxes. And the way that the tax deeds statute in that state works is there's not a foreclosure process. They apply for a treasurer's deed. And that's what happened. We have a completely different factual scenario here. Again, we have a defendant that played Russian roulette with the tax lien system. And she was not a person that did not have the means to pay her property taxes. It seems like that is maybe relevant to the merits of the Tyler claim. But I don't understand what it has to do with the Rooker-Feldman analysis. Right, because the idea is if you're going to have a claim, the time to initiate that claim was in the foreclosure process. So when we initiated the second foreclosure lawsuit. You have to raise a takings claim within the foreclosure process. Right, right. You either have to do two things. What case do you rely on that says that? Well, Your Honor, it's all of the cases. Give me one where you're saying, Judge, you need to read this case and you'll understand why they must raise this claim within the foreclosure proceeding. Sure. There's a couple. And, in fact, one just came out just three weeks ago. Howard v. McComb County, Michigan. It's a Westlaw site. Westlaw 941511. In that case. That was in Michigan. Right. Well, it's a Sixth Circuit case. Sixth Circuit. But it arose out of Michigan. But in that case, that's exactly what happened. She had the opportunity to raise the takings claims. They didn't raise it. And the case was dismissed. And that's what's going on here. She had the opportunity to do two things in our foreclosure lawsuit. She could have either redeemed the taxes or defend. If she didn't have the ability to pay the taxes, she could have defended herself and said, oh, well, I think we have a takings claim here and I think your statutes are unconstitutional. That's not what happened. She got notice of the lawsuit. She was personally served. She was served with an application for entry of default, which, by the way, Arizona's we give defendants an extra opportunity, an extra due process, unlike the Federal rule where you just file a motion for default. We file an application for default first. It gives the person ten more days to file an answer. She still didn't file an answer. We got a motion for default. We had a default hearing. She doesn't show up for the default hearing. And then we start the ‑‑ you know, we get the foreclosure judgment right here. Get the judgment, which forecloses her interest in the property. It did order the treasurer to order the treasurer's deed. And here's the key terminology right here. It is further ordered a judge and decreed that defendants, defendants' heirs, agents, and assigns are hereby foreclosed and have no further legal equitable right, title, or interest in the property, whether subject to the right of appeal and stay of execution as in any other civil actions. I mean, it's right there in black and white. She ‑‑ her property was foreclosed. Her equitable interest was foreclosed. Her title interest was foreclosed. Any claim to excess proceeds ‑‑ And her right to bring a takings claim was foreclosed. Right. It disappeared right here. And three months later, after we get this judgment, once we start the eviction proceedings, then her ‑‑ her not counsel here, but her prior attorneys, they file a motion to set aside. And what did they argue in that case? Did they say, hey, we've got a counterclaim here. We've got a takings claim. No. They said, well, despite the fact that you have an e‑mail, despite the fact that you personally served us, despite the fact that you filed an application for default and gave that to us, we didn't get notice. What are you talking about? You did get notice. You ignored it. You intentionally chose to ignore it. And that's why I say she played Russian roulette with the tax lien system. She was sued four other times. She paid the tax liens off. She thumbed her nose to the investors and didn't pay the fees and cost judgment. And then the fifth time, it caught up with her. And, again, this is not a Geraldine Tyler case who didn't have the wherewithal and the means to pay the taxes. This ‑‑ this owner had the ability. She just chose not to. She's more like the sovereign citizen who thumbs her nose at the government. That's what we have here. Not a Geraldine Tyler. I mean, the way you've posited this, your argument basically is that she needed to file a takings claim before there was a taking. No, she needed to defend herself with it. Well, no, she could have counterclaimed there. But, I mean, there was no actual taking until the judgment, right? No, it was ‑‑ What was taken from her before the judgment? Well, she had a lien on her property. And so she could have challenged ‑‑ The whole thing, if she's challenging the lien, that would have been the time in this lawsuit. I mean, that's what the whole Ruker‑Feldman doctrine prevents. We have to respect the committee and the full faith and credit clause of the United States Constitution. You have to respect the state law judgment. Allowing her to bring the separate federal case on claims that should have been brought in this original lawsuit violate that. But let's ‑‑ I only have a few minutes left. I'd like to touch on mootness real quick. So they did talk about mootness real quick. Just generally, the law has been changed. I actually helped participate in changing the law, along with the treasurer who's sitting here in the audience. Now this won't happen again. These types of situations won't happen again. But there's two aspects to the mootness that I think are very important. We recently filed a motion to supplement the record. Not only do we have mootness on the constitutional claims just in general, but the specific case is now moot. She filed, because of the district court's ruling where it said, well, we don't think you have a case, but if you do, it's in state court. She filed last year a third lawsuit, or I guess a fourth lawsuit, a fourth lawsuit, the second lawsuit against my clients, and she alleged the nearly identical claims from the federal case and the state court case. We filed a motion to dismiss. They filed a response. We filed a reply. And just a few weeks ago, the Superior Court entered a minute-entry order that said the motion to dismiss, which, by the way, we asked for a motion to dismiss with prejudice, all of these claims. The court granted the motion to dismiss. That's what the minute-entry order says. It says we grant the motion to dismiss. The only way that that order can be read and interpreted is that it dismissed these claims with prejudice. So just generally, we're dealing with mootness here, and specifically with the actual claims, those are moot, too. And at this time, Your Honor, I respectfully request that, again, unless you have any other questions, the order of the district court be reaffirmed. I just have one question of kind of a side note interest. What's the value of the property that we're talking about? That is a very good question, and I don't think the evidence was ever really truly presented. If you look at my client, the actual lien that was foreclosed, it was only $1,600, but my client had all the other liens in the property, which was about $14,000. And, of course, that accumulates interest. My client also bought an assignment of a deed of trust of an attorney who represented Surly at one time, and apparently she didn't pay, so that's about $24,000 plus interest. My client also bought a $14,000 HOA lien. We also paid another about $10,000 in taxes. The property itself is dilapidated and needs work. And so, you know, we don't really know what the value is. I mean, you can go on Zillow, you can go on Redfin and generally figure it out, but there's a lot of debt to it. And that's another thing I'd like to raise about mootness. Since we hold the deed of trust, we could turn around and foreclose the property that way, too. So, ultimately, the claims go away no matter how you slice it. So, thank you, Your Honors. Thank you. Rebuttal. Thank you, Your Honor. Many of my friends' arguments don't go to the Rooker-Feldman doctrine. They go to, I suppose, some unclean hands defense that hasn't been raised below and isn't before this court now. I will mention that page 221 of the attempted supplemental record does contain a quote from Maricopa County saying the taxpayer may redeem at any time up until a treasurer's deed is issued. So there is some tension, again, between what Maricopa says and what the private appellees say about that interim period between the judgment and when the treasurer's deed is issued. But all that set aside, think about what the injury is in Tyler. Geraldine Tyler lost her property, just like Ms. Searle in the judgment lost her property. That is not the taking. The taking is the extra money that isn't going to the debt. So Geraldine Tyler owed $15,000. Her house was auctioned off for $40,000. The $25,000 that Hennepin County retained was the taking. She was – Geraldine Tyler was entitled to that $25,000 or the just compensation for it, which is the same value, because the county retained it. Here, there is a shell game going on. The private appellees say you can't hold us accountable because we didn't actually do the taking. We're not the government. Maricopa, as you just heard today, says we didn't really do anything either. All we did was tell the private appellees that they could go ahead and take the house. That – I would let the district court figure out who's liable. We say in a Summers v. Tice situation where two people are pointing fingers at each other, let them fight that out. For a Rooker-Feldman analysis, though, it's entirely irrelevant. What we know is at a minimum, Ms. Searle has a house. We plead that its value is somewhere between $400,000 and $500,000. There is no way that all of these debts that my friend just mentioned get anywhere near that. And as the court said in Tyler, that is a classic pocketbook injury that gives her standing to bring these claims. Now, we would love for the court to reverse on all counts. We think that she ought to bring it – be able to bring her private-use facial challenge to the taking at issue. But at a minimum, the court ought to say, try to bring your challenge for just compensation, the fact that there was an excessive fine and unjust enrichment. Those are things that the court below held were squarely contradictory to the judgment below. But that's true in any eminent domain case. If someone takes my house because there's an airport that's going to be built, there's a judgment depriving me of my house. That doesn't mean that I had to bring a just compensation claim in the middle of the foreclosure process It means now I have a right to bring my 1983 claim in federal court saying I'm entitled to the value of my home. Their theory, I think, would apply in many more cases than Tyler-type scenarios. You can imagine any case where eminent domain occurs or there's some inverse condemnation and their theory would say you have to bring your just compensation claim before the actual judgment depriving you of your property. You'd have to say in superior court, you know what? You shouldn't do this condemnation because it's going to be a lot of money for you and I'm going to be entitled to that. That's not a defense. As Your Honor points out, that's not even ripe to say my defense to the taking is that there will be a just compensation remedy at the end of the day. For those reasons, the court ought to reverse and total at a very minimum the court ought to reverse and remand with respect to the surplus equity claims. Thank you. Thank you. Thank all counsel for their helpful arguments and the cases submitted.
judges: THOMAS, PAEZ, MILLER